Cocke, (Special Judge,)
delivered the opinion of the court-
The bill in this cause is filed to abate or prostrate a mill-dam, erected by the defendant, and which the complainants allege, throws the water back and dams up and destroys the only lasting and valuable spring upon their tract of land, which is situated on the verge of the creek. The defendant relies upon two grounds of defence. 1st, he insists that if there is any such spring, it is situated in the bed of the stream, so that the creek in its natural state floods it at all seasons of the year, when the pond affects it, and that the mill pond does not injure the spring; 2d, he insists that the rights of the plaintiff ought to have been tried at law, and that this court has no jurisdiction. The proof in this cause is voluminous, but it is unnecessary to examine it in detail. It appears however to be substantially proved, that before the mill was built, Parris F. Dooly, the owner of the land, who was the father of complainants, and the former husband of complainant Cynthia, consented to, and aided in building the dam; this'was in 1823. Dooly died in 1829, and there is no evidence that before his death he ever desired the dam to be demolished. The bill was filed in 1833, about ten years after the mill was built.
It is certainly well settled as a general principle in the jurisprudence of England, in respect to the exercise of all rights, that a man must enjoy his property in such a manner as not to injure that of any other person. 2 Black. Com. 215. Therefore every diversion, obstruction, or other act in relation to streams of water, which is collaterally or consequentially injurious, is obviously repugnant to this principle, and is a species of tort denominated a nuisance. A private nuisance, which is any thing done to the hurt or damage of the lands, tenements, or hereditaments of another, is the subject of proceedings at the common law by an action on the case; the party injured recovers satisfaction for the injury sustained, and every continuance of the nuisance is held to *211 be a new one, for which a new action will lie. See 3 Black. Com. 217 to 221. it is manliest, theretore, that the tiffs have an undoubted remedy at law, but still in cases where the injury is immediate and irreparable, and where the reme•dy at law is from the nature of the injury imperfect, a court of chancery will interpose. The foundation of this jurisdiction is the necessity of a preventive remedy. When great and immediate mischief in the comfort and useful enjoyment of property occurs, the interference rests upon the principle of a clear and certain right to the enjoyment of the subject in question, and an injurious interruption of that right, which upon just and equitable grounds ought to be prevented. 1 Vern. Rep. 127, 275: 16 Ves. 338: 2 John. Chan. Rep. 164, 463. The right must be clear, manifest and undoubted, otherwise a court of equity cannot interfere, until the right is ascertained at law. The right must be exclusive in its character, that is, it must be inconsistent with the assertion of a similar right in the defendant.
The determination, therefore, of opposing rights, is purely a legal question, and until such a determination a court of chancery will not interfere.
In the case before the court, the plaintiff’s title to the land on which the spring flows is undoubted, but the defendant sets up by way of defence, the consent of their ancestor to build this mill; that in consequence of such consent it was erected and great expense incurred; that after the mill was built, with a full knowledge of the consequences arising from the erection of the dam, he acquiesced therein until his death. This it is contended, and we think justly, amounts to a parol privilege or license to overflow his land; and whether or not this permission is binding, or can be revoked, is a question determinable in the courts of common law. It is questionable whether a parol consent given to the erection of a mill-dam, or a license to overflow land, after it has been erected by the other party and great expense incurred, can be revoked. The tendency of the modern decisions is that it cannot. 7 Taunt. R. 374; 8 East. 308: 5 Moore and Payne, 712: cited 2 Harrison’s Index, 1450. But be this question as it may, this is not the proper forum to determine it,
*212 Independent, however, of this around, there is , . , .1 , . . „ , 1 ’ , , , is decisive of the cause. The proof shows, that the mill dam was erected and used for ten years before any application was made to this court. In Weller vs. Smeaton, 1st Cox’s Cases, 103, the lord chancellor, speaking of this head of equity jurisdiction, says, “I take it to be ahead of equity to interpose by way of injunction, where a party is building new works upon an old possession; but when the works have been permitted to remain three years, that is considered such laches, as to preclude the party from having relief here, without first going to law.” The same principle is asserted by Chancellor Kent, in Read vs. Gifford, 6 John. Chan. Rep. 19. In that case the tunnel had been made, and the water diverted upwards of three years. Chancellor Kent, in denying the motion for an injunction, said, “that the tunnel had been made, and the water diverted upwards of three years ago, and the right ought first to be settled at law.” In the case before the court, the mill dam was built and the spring overflowed upwards of ten years before the bill was filed. Under such circumstances, we think, the complainants’ right ought to be first settled at law; we therefore affirm the decree.
Decree affirmed.